IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MATTHEW P. PAXTON, KRIS MILLER           No.   CIV.S-02-1527 DAD
PAXTON,

      Plaintiffs,

   v.                                        ORDER

SQUAW VALLEY SKI CORPORATION,

      Defendant.
_____/

     This matter came before the court on July 15, 2005, for
hearing on defendant's motion for new trial, or in the alternative
remittitur.  Bruce S. Osterman and David E. May appeared on behalf of
plaintiffs.  John E. Fagan and Michael L. Reitzell appeared on behalf
of defendant.  Having considered all written materials submitted in
connection with the motion, and after hearing oral argument,
defendant's motion will be denied.

**LEGAL STANDARDS**

     Where, as here, there has been a trial by jury, Federal
Rule of Civil Procedure 59(a) provides that a new trial may be

1

granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States[.]" Thus, the granting of a new trial is discretionary with the court and has been said to be subject to no fixed rule except a consideration of what is just. Murphy v. United States District Court, 145 F.2d 1018, 1020 (9th Cir. 1945). The burden of persuasion on a motion for new trial is on the movant, and the court should not lightly disturb a plausible jury verdict. Anglo-Am. Gen. v. Jackson Nat'l Life Ins., 83 F.R.D. 41, 43 (N.D. Cal. 1979). Of course, "[a] district court may not grant a new trial simply because it would have arrived at a different verdict." Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001) (citing United States v. 4.0 Acres of Land, 175 F.3d 1133, 1139 (9th Cir. 1999)).

If the motion is based upon insufficiency of the evidence, a stringent standard applies. E.E.O.C. v. Pape Lift, Inc., 115 F.3d 676, 680 (9th Cir. 1997). In such an instance the court may grant the motion only if the verdict is against the clear weight of the evidence and the verdict results in the miscarriage of justice or it is quite clear that the jury has reached a seriously erroneous result. City Solutions, Inc. v. Clear Channel, 365 F.3d 835, 843 (9th Cir. 2004); Pape Lift, Inc., 115 F.3d at 680; Digidyne Corp. v. Data Gen. Corp., 734 F.2d 1336, 1347 (9th Cir. 1984).

While a motion for new trial may also be based on grounds of excessive damages, the court must allow substantial deference to a jury's finding of the appropriate amount of damages. Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 95 F.3d 1422, 1435 (9th Cir.

2

1996).  Generally, a new trial will not be granted unless the verdict is so excessive that it could only have been the result of passion or prejudice, or is grossly excessive, monstrous or shocking to the conscience.  Id.; Zhang v. American Gem Seafoods, Inc., 339 F.3d 1020, 1040 (9th Cir. 2003), cert. denied 541 U.S. 902 (2004); Havens v. F/T Polar Mist, 996 F.2d 215, 219 (9th Cir. 1993); Hasbrouck v. Texaco, 842 F.2d 1034, 1044 (9th Cir. 1987).  See also Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563 (1931) ("Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.  In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate."); Silver Sage Partners, Ltd., 251 F.3d at 820 n.6 (the mere fact that different assessments of damages are possible is not a reason for finding a particular assessment to be "too speculative").  In considering a request for remittitur, a jury's award of damages should remain undisturbed unless that award is based on speculation or guesswork.  See City of Vernon v. Southern Cal. Edison Co., 955 F.2d 1361, 1371 (9th Cir. 1992).

If the motion is based on the misconduct of counsel, a new trial should only be granted where the flavor of misconduct sufficiently permeated the entire proceeding to provide conviction

3

that the jury was influenced by passion and prejudice in reaching its verdict.  <u>Settlegoode v. Portland Pub. Schs.</u>, 371 F.3d 503, 516-17 (9th Cir.), <u>cert.</u> <u>denied</u> ___U.S.___, 125 S. Ct. 478 (2004); <u>Anheuser-Busch, Inc. v. Natural Beverage Distribs.</u>, 69 F.3d 337, 346 (9th Cir. 1995).

Finally, if a motion for new trial is based upon an alleged evidentiary error, a new trial is warranted only if the party was "substantially prejudiced" by an erroneous admission of the evidence. <u>Ruvalcaba v. City of Los Angeles</u>, 64 F.3d 1323, 1328 (9th Cir. 1995); <u>United States v. 99.66 Acres of Land</u>, 970 F.2d 651, 658 (9th Cir. 1992).

## **ANALYSIS**

This personal injury action arises from a skiing accident that occurred on April 30, 2002, at Squaw Valley Ski Area. Plaintiffs Matthew Paxton and his wife, Kris Paxton, alleged that Mr. Paxton was injured after he inadvertently skied into a man-made terrain feature called a half-pipe, located within a terrain park on the premises of the defendant Squaw Valley Ski Corporation. Plaintiffs alleged that defendant was negligent in maintaining and marking the terrain park and half-pipe.  Defendant denied such negligence and maintained that the terrain park and half-pipe were properly marked with signs and enclosed with a rope-line.  Defendant also disputed the amount of the damages and the extent of the injuries claimed by plaintiffs.

After an eleven-day jury trial conducted between May 9 and May 25, 2005, the jury returned a unanimous verdict in favor of

plaintiff Matthew Paxton.  Specifically, the jury found defendant

Squaw Valley Ski Corporation ninety-four (94) percent at fault and

plaintiff Mr. Paxton six (6) percent at fault for the accident.  The

jury award Mr. Paxton $84,326 for past medical expenses; $198,304.00

for past lost wages; and $1,413,150.00 in general damages.  The total

gross award was $1,695,780.00.  The total net award was

$1.594,033.20.[1]

Defendant has moved for a new trial on grounds that the

jury verdict is not supported by the evidence, is excessive, and is

the result of plaintiffs' counsel's misconduct during the trial.

Defendant also challenges one of the court's in limine rulings.  The

court addresses defendant's arguments below.

Defendant's first argument in support of its motion for a

new trial is that the jury verdict is not supported by the evidence.

Specifically, defendant asserts that the clear weight of the evidence

favored a finding that a perimeter rope-line was properly in place

around the terrain park at the time of Mr. Paxton's accident.  In

this regard defendant relies, as it did at trial, on the testimony of

ski patrollers, terrain park personnel and a lift operator which,

according to defendant, clearly demonstrated that the terrain park

was properly marked and maintained before, during and after the

accident.  Defendant also relies on the various photographs taken

after the accident had occurred depicting the properly marked and

maintained park.  Defendant's arguments are unavailing.

---

[1]  No damages were awarded on Mrs. Paxton's loss of consortium
claim, which the jury rejected.

1          During the pretrial proceedings and throughout the trial,

2  defendant, plaintiffs and the court generally shared the view that

3  this case came down to the following central question: Did plaintiff

4  Matthew Paxton see, or should he have seen, signs, ropes or other

5  barriers that would have warned or prevented him from entering the

6  half-pipe?  Defendant argued to the jury that the evidence presented

7  at trial compelled them to conclude that Mr. Paxton did encounter

8  ropes, signs and other barriers in his path but that he chose to

9  disregard the warnings by ducking under the rope-line and proceeding

10  on his path of travel.  Plaintiffs argued that the evidence,

11  including Mr. Paxton's testimony and the defendant's own photographs

12  of the scene after the fact, overwhelmingly established that the

13  rope-line and warnings were not present and/or not visible at Mr.

14  Paxton's point of entry into the area due to defendant's negligence.

15  In considering the testimony and the other evidence admitted at

16  trial, the jury obviously made various credibility determinations

17  consistent with the instructions they were given and found in favor

18  of plaintiff Matthew Paxton.  As observed by the court during the

19  hearing on the instant motion, the verdict suggests that the jury

20  found Mr. Paxton's testimony credible and compelling while at the

21  same time finding the deposition and trial testimony of the many

22  defense witnesses to be compromised by numerous inconsistencies.  It

23  would appear that in addition to the testimony of witnesses the jury

24  considered the defendant's own photographs, some taken within hours

25  of the accident and some taken the following morning, depicting the

26  ski run that Mr. Paxton traversed which led him into the half-pipe

thereby causing his injuries.  As plaintiff's counsel persuasively argued to the jury, those photographs and their clear depiction of innumerable uninterrupted ski tracks passing straight through the area that defendant claimed was blocked off with ropes was strong circumstantial evidence that the ropes, barriers and signs were not present or visible at the time of plaintiff's accident.  In light of such evidence, the court cannot conclude that the jury's verdict is against the great weight of the evidence.

The court recognizes that in all nine defense witnesses testified regarding the presence of a properly maintained rope-line whereas only plaintiff Matthew Paxton testified to the absence of any such barrier.  However, this nine-to-one ratio does not persuade the court that defendant should be granted a new trial.  The jury did not err even if it based its verdict on the finding of one witness more credible than all of the others.  Indeed, in relevant part, the jury was instructed as follows:

> The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

(Jury Instruction No. 8.)

In sum, the court sees no reason to disturb the jury's verdict as to liability.  The court rejects defendant's argument that the jury verdict is unsupported by the evidence introduced at trial.

/////

/////

The verdict is not against the great weight of the evidence nor is it clear that the jury reached a seriously erroneous result.[2]

Defendant's next argument is that a new trial should be granted because the jury's damages award is excessive. As defendant points out, the jury awarded slightly higher general damages than counsel for plaintiffs suggested in his closing argument. Also, there was evidence that plaintiff Matthew Paxton has returned to work following his accident and, to a certain extent, has begun to engage in many of the activities he enjoyed prior to the accident. Although a jury could have properly awarded less, the court cannot find the jury's verdict to be "grossly excessive," "monstrous," "shocking to the conscience," or the result of "passion or prejudice." Del Monte Dunes at Monterey, Ltd., 95 F.3d at 1435.

While the jury may have been generous with its award, there is no exact standard for fixing the compensation to be awarded for general damages. (See Jury Instruction No. 27.) In closing argument, counsel for plaintiffs argued for general damages in an

---

[2] The court recognizes that the jury found Mr. Paxton's negligence a factor in causing his own harm and assigned six (6) percent of responsibility to plaintiff in this regard. However, the court does not agree with defendant that this finding evinces a belief on the part of the jury that Mr. Paxton ducked under any rope-line around the terrain park. The jury's finding of comparative fault could have been based on any number of reasons. The court notes that the jury was instructed that, "[i]n determining the parties' comparative fault, you should consider Matthew Paxton's voluntary decision to encounter the risks of skiing. Whether Matthew Paxton acted reasonably or not in choosing to take those risks, you may reduce his recovery to account for his assumption of risk by whatever amount you find proper in light of all the evidence." (Jury Instruction No. 27.) It appears that the jury diligently followed the court's instruction in this regard.

amount three to five times greater than special damages.  This is not

inconsistent with how cases are often evaluated in the personal

injury arena.  The jury appears to have been persuaded by the

argument in that Mr. Paxton's special damages totaled $282,630,

exactly one-fifth of the $1,413,150.00 in general damages awarded.

Moreover, at the trial plaintiffs offered testimony and

documentary evidence of Mr. Paxton's multiple operations and the

permanent injuries which he suffered as a result of the accident in

question.  That body of evidence demonstrated the gravity of those

injuries as well as the resulting pain and suffering for Mr. Paxton,

who is only 47 years of age with a life expectancy of another 31

years according to mortality tables.  (See Jury Instruction No. 28.)

Given the evidence introduced at trial, the jury's award of general

damages should not be disturbed.  Fox v. GMC, 247 F.3d 169, 180 (4th

Cir. 2001) ("Courts defer to a jury's award of damages for intangible

harms, such as emotional distress, because the harm is subjective and

evaluating it depends considerably on the demeanor of the

witnesses."); Baker v. John Morrell & Co., 266 F. Supp. 2d 909, 944

(N.D. Iowa 2003) ("[A]wards for pain and suffering are highly

subjective and should be committed to the sound discretion of the

jury, especially when the jury is being asked to determine injuries

not easily calculated in economic terms."), aff'd 382 F.3d 816 (8th

Cir. 2004).

The court is also not persuaded by defendant's argument

that the amount of general damages awarded is substantially larger

than plaintiff Matthew Paxton's special damages.  In this regard,

1   defendant asserts that any award of general damages must be based

2   solely upon Mr. Paxton's _medical_ special damages ($84,326), and

3   should not take into account lost income.  Thus, defendant asserts

4   that a more reasonable general damages award would be approximately

5   three to five times $84,326.  While defendant advances policy

6   arguments in support of this damages calculation argument, it is

7   unsupported by any legal authority.  Indeed, in the only case cited

8   by either party regarding the relationship between special and

9   general damages, plaintiffs have pointed out that the California

10  Court of Appeal upheld an award of general damages which was nearly

11  nineteen times the amount of combined special damages.  See Westphal

12  v. Wal-Mart Stores, Inc., 68 Cal. App. 4th 1071, 1078-80, 81 Cal.

13  Rptr. 2d 46, 50-52 (1998).[3]

14      The court also rejects defendant's creative argument that

15  the jury's award of pain and suffering damages was analogous to an

16  award of punitive damages which was constitutionally excessive under

17  the Due Process Clause of the Fourteenth Amendment.  As the Supreme

18  Court has recognized:

19          Compensatory damages "are intended to redress the
            concrete loss that the plaintiff has suffered by
20          reason of the defendant's wrongful conduct."  By
            contrast, punitive damages serve a broader
21          function; they are aimed at deterrence and
            retribution.

22

23

24      [3]   "In determining whether a jury award for compensatory
        damages is excessive, a court may review awards made in similar cases
25      to determine whether or not an award is excessive and calls for an
        order of remittitur."  Velez v. Roche, 335 F. Supp. 2d 1022, 1039
26      (N.D. Cal. 2004) (quoting Thornton v. Kaplan, 958 F. Supp. 502, 505
        (D. Colo. 1996)).

1  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416

2  (2003)(holding that award of $145 million in punitive damages on $1

3  million compensatory judgment violated due process).  Here, the jury

4  awarded only compensatory damages.  The jury was instructed not to

5  include any sum for purposes of punishing the defendant or to serve

6  as an example or warning to others.  (See Jury Instruction No. 27.)

7  The jury is presumed to have followed the court's instructions and

8  there is no reason to believe that they did not do so in returning

9  their verdict in this case.  Aguilar v. Alexander, 125 F.3d 815, 820

10 (9th Cir. 1997) ("Juries are presumed to follow the court's

11 instructions."); Alaska Airlines, Inc. v. United Airlines, Inc., 948

12 F.2d 536, 545 (9th Cir. 1991).

13         For all of these reasons, the court finds the jury's award

14 of damages not to be excessive.  Moreover, because the court finds

15 the damages award not to be excessive, the defendant's alternative

16 motion for remittitur will also be denied.

17         Defendant's next argument is that the excessive verdict was

18 the result of plaintiffs' counsel's misconduct during the trial.

19 That argument is also unpersuasive.  Neither counsel for defendant

20 nor counsel for plaintiffs engaged in misconduct during the trial.

21 While both sides employed strategies that may have approached areas

22 addressed by the court's pretrial orders or other rulings, none of

23 counsels' actions amounted to misconduct, much less misconduct that

24 "sufficiently permeated" the entire proceeding in such a way as to

25 lead to a conviction that the jury was influenced by passion and

26 /////

1  prejudice in reaching its verdict.  See Settlegoode, 371 F.3d at 516-

2  17; Anheuser-Busch, Inc., 69 F.3d at 346.

3         Finally, defendant seeks a new trial by again challenging

4  the court's pre-trial in limine ruling excluding reference to a

5  liability release Matthew Paxton signed in exchange for the voucher

6  he used to receive his lift ticket on the day of his accident.  In

7  its motion for new trial, defendant raises no new arguments with

8  respect to this issue.  For the reasons set forth on the record at

9  the hearing on the in limine motions, the court finds that the

10  exclusion of any evidence at trial with respect to the liability

11  release at issue was appropriate.  Moreover, even if reference to the

12  release was erroneously excluded, there has been no showing by

13  defendant that it was "substantially prejudiced" by the exclusion of

14  such evidence.  Accordingly, the court finds that there has been no

15  error of law requiring a new trial. See Ruvalcaba, 64 F.3d at 1328;

16  99.66 Acres of Land, 970 F.2d at 658.

17                          **CONCLUSION**

18         Defendant has adduced nothing in the record to demonstrate

19  that the verdict is either excessive, unsupported by evidence, the

20  result of attorney misconduct or the result of an erroneous in limine

21  ruling.  Accordingly, defendant's motion for a new trial, or in the

22  alternative remittitur, is denied.

23         IT IS SO ORDERED.

24  DATED: August 18, 2005.

25

26  DAD:th                        _____
    orders.consent\paxton1527.newtrial     DALE A. DROZD
                                  UNITED STATES MAGISTRATE JUDGE